UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CHANGJI ESQUEL TEXTILE CO. LTD., *et al.*,

                               Plaintiffs,

                                  v.                        Civ. Action No.1:21-cv-01798-RBW

GINA M. RAIMONDO, SECRETARY OF COMMERCE, *et al.*,

                               Defendants.
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE SCHEDULE AND SET A DEADLINE FOR PARTIES TO SUBMIT A JOINT STATUS REPORT, OR, IN THE ALTERNATIVE, TO EXTEND DEADLINE TO OPPOSE PRELIMINARY INJUNCTION**

      Plaintiffs Changji Esquel Textile Co. Ltd. ("CJE"), Esquel Enterprises Limited, and Esquel Apparel Inc. respectfully oppose Defendants' motion to vacate the August 3 deadline for their response to Plaintiffs' motion for a preliminary injunction, or, in the alternative, to extend Defendants' preliminary injunction opposition deadline to August 16, 2021. Plaintiffs did not seek litigation; instead, they have tried to avoid it for months through direct outreach, including by sharing their draft complaint with the Government two weeks before filing. But given the accruing harm Plaintiffs face, and the Government's own uncertainty regarding the outcome of its "anticipated" administrative decision, Plaintiffs submit that Defendants should respond to Plaintiffs' motion pursuant to this Court's schedule—*i.e.*, "on or before August 3, 2021 at 12:00pm." Minute Order (July 20, 2021).

      The basis for Defendants' motion is that they "anticipate an imminent administrative decision that may render briefing unnecessary or otherwise substantially impact the issues in dispute." Mot. 1. But the Court's schedule—which gives the Government more than double the

1

standard "seven days" to file an opposition, *see* LCvR 65.1(c)—already takes that potential decision into account.  In particular, the date by which Defendants "anticipate" an administrative decision—August 1, 2021—is two days before Defendants' current deadline to respond (August 3), and five days before the hearing this Court set (August 6).  Thus, if the anticipated decision actually materializes, the Court and parties can address the impact of the August 1 decision, if any, either before or (if still necessary) during the scheduled hearing.

To be clear, Plaintiffs wish to proceed as efficiently as possible and to "conserve the Court's and the parties' resources." Mot. ¶ 9.  But the Court's existing schedule does just that.  In particular, if Defendants remove CJE from the Entity List on August 1 (thus rendering the relief Plaintiffs seek moot), the parties can jointly request to hold briefing in abeyance and remove the hearing from the calendar.  Critically, however, any other action that Defendants take will *not* alter Plaintiffs' need for injunctive relief.  *Cf.* Mot. ¶ 9 (arguing only that "the parties may desire to alter their arguments" for decisions other than removal).  Because Plaintiffs challenge Defendants' original July 2020 placement of CJE on the list as unlawful and *ultra vires*, any decision short of removal will not alleviate Plaintiffs' harm or render the relief they seek moot.  If Defendants take some action that actually changes the state of play, CJE will work with the Government to jointly inform the Court what changes to the schedule, if any, are necessary.  In the meantime, Plaintiffs' relief from ongoing (and growing) irreparable harms should not be delayed.

Contrary to the Government's suggestions (Mot. ¶¶ 4-7), CJE has acted with the utmost diligence since being placed on the Entity List.  The Government acknowledges that CJE has directly sought removal from the list since September 25, 2020, and "additionally made multiple supplemental submissions in support of its request, the most recent on February 5, 2021" Mot. ¶ 4.  What the Government fails to mention is that, after its February submission—which was made

2

in response to the only set of questions CJE received from the Government—Plaintiffs heard nothing for more than four months until they shared a copy of their draft litigation complaint with the Government on June 21, 2021, and told the Government that Plaintiffs felt they needed to file two weeks later (the week of July 5, 2021) absent interim relief.  That is why, "[o]n July 5, 2021, the Government notified [CJE] that it would inform it of the outcome of the Committee's review no later than August 1, 2021," Mot. ¶ 4—though without offering any assurance that the potential decision would be a favorable one.  Although Plaintiffs appreciated the Government's update, they reasonably concluded that they could not bear to suffer harm for another month in anticipation of a decision that might not alter the status quo.

       Plaintiffs continued to try to work with the Government after filing this suit.  The day Plaintiffs filed—July 6, 2021—Plaintiffs reached out to attorneys in the Federal Programs Division of the Department of Justice to discuss (a) obtaining a copy of the administrative record and (b) a potential joint briefing schedule for their planned preliminary injunction motion.  On Monday, July 12, Plaintiffs followed up and, for the first time, connected with Defendants' counsel.  During phone conversations on July 12 and 13, Plaintiffs' counsel informed Defendants' counsel that they needed to move for a preliminary injunction on Wednesday, July 14, unless the Government could either provide a date by which it would share the administrative record or a meaningful update regarding CJE's Entity List status.  Although Defendants declined to give a date by which they would share the administrative record, they suggested that a meaningful update was forthcoming— and on that basis, Plaintiffs agreed to delay filing until Monday, July 19.  But when the Government's update just reiterated the August 1 decision date—again without any assurance that the decision would change the status quo—Plaintiffs again reasonably concluded that they could not delay filing further.

In light of their ongoing irreparable harm, Plaintiffs will be prejudiced if forced to wait indefinitely for a briefing schedule following an August 4 joint status report. As explained in the Declaration of Esquel Chairman and Chief Executive Officer Marjorie Yang, major U.S. and European customers reduced or cut off their business with Esquel after Defendants placed CJE on the list. Declaration of Esquel Chairman and CEO Marjorie Yang ("Yang Decl."), Dkt. No. 9, Ex. 1 at ¶ 29. Esquel's reputation has been deeply tarnished, and it has lost hundreds of millions of dollars—about one quarter of its annual revenue. *Id.* ¶ 30. Esquel has had to close factories, lay off employees, and reduce operations at other locations. *Id.* ¶¶ 41-42. These are only some of the harms Plaintiffs have faced and will continue to face as long as CJE remains on the Entity List. Indeed, these harms will only worsen as Esquel continues to lose customers—which is the reality Esquel faces each day CJE remains on the Entity List. *See id.* ¶¶ 29, 45.[1]

In sum, Plaintiffs should not be required to endure increasing and irreparable harm based on the possibility that Defendants' anticipated August 1 decision might be favorable. Instead, absent a significant change in the status quo, Defendants should be required to respond, and Plaintiffs' motion should be heard, in accordance with the schedule this Court set, which already accounts for the Government's anticipated August 1 administrative decision date.

---

[1] Although the Government suggests that Plaintiffs' economic harms are not "generally" irreparable, Mot. 11, "when a plaintiff's alleged damages are unrecoverable, such as here, due to the sovereign immunity enjoyed by Defendants, courts have recognized that unrecoverable economic loss can indeed constitute irreparable harm." *Xiaomi Corp. v. Department of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021) (citing cases). As the Government's cited case demonstrates, Plaintiffs need only show "that the economic harm be significant, even where it is irretrievable because a defendant has sovereign immunity." *Air Transp. Ass'n of Am., Inc. v. Export-Import Bank*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012).

Respectfully submitted,

Dated:  July 21, 2021

 s/ James E. Tysse
James E. Tysse
  D.C. Bar No. 978722
Caroline Wolverton
  D.C. Bar No. 496433
Margaret O. Rusconi (*admission pending*)
  D.C. Bar No. 1719371

Akin Gump Strauss Hauer & Feld LLP
2001 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
jtysse@akingump.com

*Counsel to Plaintiffs Changji Esquel Textile Co. Ltd., Esquel Enterprises Limited, and Esquel Apparel Inc.*