UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANGJI ESQUEL TEXTILE CO. LTD., et al., <br><br>    Plaintiffs, <br><br>  v. <br><br>GINA M. RAIMONDO, in her official capacity as the Secretary of Commerce, et al., <br><br>    Defendants. | Civil Action No. 21-1798 (RBW) |

## MEMORANDUM OPINION

The plaintiffs, Changji Esquel Textile Co. Ltd. ("Changji"), Esquel Enterprises Limited, and Esquel Apparel Inc.,[1] bring this civil action against the defendants, the United States Department of Commerce (the "Department"), Gina M. Raimondo, the Secretary of the Department, the Bureau of Industry and Security ("BIS"), Jeremy Pelter, the Acting Under Secretary of the BIS, Matthew S. Borman, the BIS Deputy Assistant Secretary for Export Administration, and Joseph Cristofaro, the BIS End-User Review Committee Chair, alleging that defendants, in placing Changji on the U.S. Entity List, acted ultra vires and in excess of their statutory and regulatory authority in violation of the Administrative Procedure Act (the "APA") and the Fifth Amendment to the United States Constitution. See Am. Compl. ¶¶ 84–104. Currently pending before the Court is the Plaintiffs' Motion for [a] Preliminary Injunction (the "plaintiffs' motion" or "Pls.' Mot."), ECF No. 9. Upon careful consideration of the parties'

---

[1] The plaintiff companies represent that they are "part of the Esquel group of companies, an independent, family-owned textile and apparel manufacturing business based in Hong Kong with operations around the world, including in the United States." Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl.") ¶ 2, ECF No. 8.

submissions[2] and the oral arguments presented at the motion hearing held on September 24, 2021, the Court, on October 6, 2021, issued an order denying the plaintiffs' motion because "the plaintiffs cannot establish a likelihood of success on the merits[.]"  Order at 1 (Oct. 6, 2021), ECF No. 34.  The Court is issuing this Memorandum Opinion to further explain that decision.

## I.     BACKGROUND

On July 22, 2020, the defendants exercised their authority under the Export Control and Reform Act ("ECRA") to place Changji on the United States' "Entity List," see Addition of Certain Entities to the Entity List; Revision of Existing Entities on the Entity List , 85 Fed. Reg. 44,159–60 (July 22, 2020) (to be codified at 15 C.F.R. pts. 730–74) (the "ECRA provides the legal basis for BIS's principal authorities and serves as the authority under which BIS issues this rule."), which is being challenged by the plaintiffs.

**A.     The Entity List**

Broadly, the ECRA provides authorization for, inter alia, the creation and maintenance of various lists and the establishment of licensing regimes and regulatory processes.  See 50 U.S.C. §§ 4813(a)(1)–(16).  "[I]n consultation with the Secretary of State, the Secretary of Defense, the Secretary of Energy, and the heads of other Federal agencies as appropriate," the Department is empowered to engage in a plethora of regulatory activity, including "establish[ing] and maintain[ing] a list of items that are controlled[,]" see id. § 4813(a)(1), "requir[ing] licenses or other authorizations," id. § 4813(a)(5), "creat[ing], as warranted, exceptions[,]" id. §

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction ("Pls.' Mem."), ECF No. 9; (2) the Declaration of Marjorie Yang ("Yang Decl."), ECF No. 9-1; (3) the Supplemental Declaration of Marjorie Yang ("Yang Suppl. Decl."), ECF No. 16; (4) the Defendants' Statement of Points and Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Defs.' Opp'n"), ECF Nos. 25 (redacted), 28 (unredacted); (5) the sealed Declaration of Nnedinma Ifudu Nweke ("Nweke Decl."), ECF No. 26; (6) the Second Supplemental Declaration of Marjorie Yang ("Yang 2d Suppl. Decl."), ECF No. 27; and (7) the Plaintiffs' Reply in Support of Motion for Preliminary Injunction ("Pls.' Reply"), ECF Nos. 32 (redacted), 33 (unredacted).

4813(a)(14), and "undertak[ing] any other action as is necessary to carry out [the objectives of the ECRA] that is not otherwise prohibited by law[,]" id. § 4813(a)(16). The Department is also empowered to "establish and maintain a list of foreign persons and end-uses that are determined to be a threat to the national security and foreign policy of the United States pursuant to the policy set forth in [§] 4811(2)(A)[,]" id. § 4813(a)(2). Section 4811(2)(A), as referenced by § 4813(a)(2), explains that "[t]he national security and foreign policy of the United States require . . . control[s]" on the release of items for use in:

> (i) the proliferation of weapons of mass destruction or of conventional weapons;
> (ii) the acquisition of destabilizing numbers or types of conventional weapons;
> (iii) acts of terrorism;
> (iv) military programs that could pose a threat to the security of the United States or its allies; or
> (v) activities undertaken specifically to cause significant interference with or disruption of critical infrastructure.

Id § 4811(2)(A). Section 4811 further provides that "[t]he national security and foreign policy of the United States require" controls for the purpose of "carry[ing] out the foreign policy of the United States, including the protection of human rights and the promotion of democracy." Id. § 4811(2)(D).

Pursuant to the ECRA's broad grant of authority, the Department "maintains [an] 'Entity List,' which includes foreign persons 'reasonably believed to be involved, or to pose a significant risk of being or becoming involved, in activities contrary to the national security or foreign policy interests of the United States.'" Defs.' Opp'n at 1 (quoting 15 C.F.R. § 744.16; 15 C.F.R. pt. 744 Supp. No. 4). The BIS, which publishes the Entity List, notes that the "grounds for inclusion on the Entity List have expanded to activities sanctioned by the State Department and activities contrary to U.S. national security and/or foreign policy interests." Bureau of Indus. &

3

Sec., Entity List (2020), https://www.bis.doc.gov/index.php/policy-guidance/lists-of-parties-of-concern/entity-list.

The Export Administration Regulations ("EARs") serve as the defendants' primary export control regulations promulgated, inter alia, pursuant to the ECRA and are "intended to serve the national security, foreign policy, nonproliferation of weapons of mass destruction, and other interests of the United States." 15 C.F.R. § 730.6.  Within the EARs, the defendants have established that an entity may be placed on the Entity List if "there is reasonable cause to believe, based on specific and articulable facts, that the entity has been involved, is involved, or poses a significant risk of being or becoming involved in activities that are contrary to the national security or foreign policy interests of the United States[.]" Id. § 744.11(b).  The End-User Review Committee, an inter-agency committee, id. pt. 748 Supp. No. 9, is charged with maintaining the Entity List in accordance with the criteria for placement on the Entity List, see id. § 744.11.  Listed entities are "prohibited from receiving some or all items subject to the EARs [ ] unless the exporter secures a license." Pls.' Mem. at 2–3; see generally 15 C.F.R. § 744.11.  The defendants issue licenses on a case-by-case basis for items "necessary to detect, identify and treat infectious disease[,]" but all other license applications are presumptively denied for most items.  85 Fed. Reg. at 44,160.  The defendants also "consider[] that transactions of any nature with listed entities carry a 'red flag' and recommends that U.S. companies proceed with caution with respect to such transactions." Bureau of Indus. & Sec., Entity List FAQs (2020), https://www.bis.doc.gov/index.php/cbc-faqs.

**B.     Changji's Addition to the Entity List**

On July 22, 2020, the defendants added Changji to the Entity List.  The defendants listed Changji pursuant to section 744.11(b) of the EARs, see 85 Fed. Reg. at 44,159, which provides

that an entity may be placed on the "Entity List" where "there is reasonable cause to believe, based on specific and articulable facts, that the entity has been involved, is involved, or poses a significant risk of being or becoming involved in activities that are contrary to the national security or foreign policy interests of the United States[,]" 15 C.F.R. § 744.11(b). According to the defendants, Changji was added to the Entity List because the defendants determined that Changji was "engaging in activities contrary to the foreign policy interests of the United States through the practice of forced labor involving members of Muslim minority groups in the [Xiniang Uyghur Autonomous Region]." 85 Fed. Reg. 44,159. Along with Changji, the defendants added ten other entities for the same reasons. Id.

**C.     Procedural Background**

On July 6, 2021, the plaintiffs initiated this case, "seek[ing] relief from devastating economic and reputational harms that [the d]efendants have inflicted on [the p]laintiffs" as a result of the defendants' addition of Changji to the Entity List. See Complaint for Declaratory and Injunctive Relief ¶ 1, ECF No. 1. On July 19, 2021, the plaintiffs filed an amended complaint, see generally Am. Compl., and their motion for an injunction, see generally Pls.' Mot.

In response to the plaintiffs' motion, the Court set dates for briefing and an expedited hearing on August 6, 2021. Min. Order (July 20, 2021). However, on August 3, 2021, the parties filed a joint request to vacate the August 6, 2021 hearing date and to extend the defendants' date to file their opposition to the plaintiffs' motion. See Joint Motion to Vacate Hearing Date and Extend Defendants' Deadline to Oppose Preliminary Injunction by 30 Days at 1, ECF No. 17. In that motion, the parties represented that, on July 31, 2021, the End-User Review Committee "decided to remove [Changji] from the Entity List subject to certain

conditions." Id. at 1–2. Therefore, on August 3, 2021, the Court granted the parties' joint motion. See Min. Order (August 3, 2021).

However, on August 27, 2021, the plaintiffs filed a motion to reschedule the preliminary injunction hearing. Plaintiffs' Unopposed Motion to Re-Set Hearing on Preliminary Injunction Motion Within 21 Days at 1, ECF No. 18. According to the plaintiffs, "[u]nfortunately, despite good-faith efforts by all parties to resolve the underlying dispute, . . . [the d]efendants have not been able to provide any concrete timeline or assurance of imminent relief from the ongoing irreparable harms [that the p]laintiffs are suffering." Id. at 3. Thus, Changji remains on the Entity List, though some negotiations between the plaintiffs and defendants remain ongoing. See id.

On September 24, 2021, the Court held a hearing on the plaintiffs' motion for injunctive relief, during which the parties presented oral argument, and the Court took the matter under advisement. On October 6, 2021, the Court issued an order denying the plaintiffs' motion and indicated that it would endeavor to "release a Memorandum Opinion that explains the Court's rationale in full within the next thirty days." Order at 1 n.1 (Oct. 6, 2021).

## II. STANDARD OF REVIEW

A party moving for a preliminary injunction must show "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." [3] Chaplaincy of Full Gospel Churches

---

[3] The defendants contend that, in light of the fact that the plaintiffs seek "to undo the implementation or enforcement of an Entity List designation made over a year ago[,]" the applicable standard of review is stricter in this case than it otherwise would be because the sought-for injunction would alter, rather than preserve, the status quo. Defs.' Opp'n. at 12. The plaintiffs contest the applicability of the stricter standard of review, arguing that the plaintiffs are fighting to maintain the status quo that existed before Changji was placed on the list. Pls.' Reply at 3. The Court is inclined to agree with the defendants' position that, because of the plaintiffs' delay in seeking injunctive relief, the
(continued . . .)

6

v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  In seeking a preliminary injunction, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction."  Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation marks omitted).[4]

### III.  ANALYSIS

The plaintiffs argue that they are entitled to a preliminary injunction because: (1) they are likely to succeed on the merits of their ultra vires statutory and regulatory claims, Pls.' Mem. at 13–14; (2) the "listing of [Changji] has irreparably harmed, and will continue to irreparably harm, [the p]laintiffs[,]" id. at 20; and (3) "removing that listing will not harm the government and will instead further multiple important public interests[,]" id. at 28.  The Court will address each of these arguments in turn.

### A.    Substantial Likelihood of Success on the Merits

The plaintiff's likelihood of success on the merits is a "key issue [and] often the dispositive" factor at the preliminary injunction stage.  Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev., 639 F.3d 1078, 1083 (D.C. Cir. 2011).  As to this

---

(. . . continued)
status quo is more aptly characterized by the current regulatory situation.  However, despite the merits of the defendants' position, the plaintiffs are correct that the District of Columbia Circuit "has rejected any distinction between a mandatory[—seeking change to the status quo—]and prohibitory[—seeking to maintain the status quo—] injunction[.]"  League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 7 (D.C. Cir. 2016).  Thus, the differentiation between the two standards of review is "an essentially arbitrary criterion[,]" id., and the Court need not apply a higher standard of review.

[4] "The four factors have typically been evaluated on a 'sliding scale[]'" in this jurisdiction.  Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009).  But the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), casts doubt on the propriety of that approach.  See Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015).  Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required."  Holmes v. FEC, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014).  And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'"  Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).  However, "[i]t matters not in this case whether the [C]ourt applies the sliding scale: either way, [the p]laintiffs have not met their burden."  Pantoja v. Martinez, Civil Action No. 21-2197 (APM), 2021 WL 4891532, at *3 (D.D.C. Oct. 19, 2021).

factor, the plaintiffs advance two different—but closely related—claims that the defendants acted beyond their authority in adding Changji to the Entity List: (1) that the "[d]efendants' reason for putting [Changji] on the Entity List was not one of the limited bases approved by Congress[,]" and (2) the "[d]efendants neither possessed nor offered any 'specific and articulable facts' for [Changji]'s listing, as required by the governing regulations." Pls.' Mem. at 13–14. The Court will address both of these claims in turn.

1. **The Plaintiffs' Claim that the Defendants Exceeded Their Statutory Authority**

The plaintiffs first claim that, by including Changji on the Entity List, the defendants exceeded their statutory authority as delegated to them by Congress through the ECRA. See Pls.' Mem. at 14. Specifically, the plaintiffs argue that the defendants acted improperly in placing Changji on the Entity List for alleged human rights violations because the ECRA only permits the listing of individuals or companies on the Entity List "pursuant to the policy set forth in [§] 4811(2)(A)[,]" which requires that "the entity is involved in one of the five enumerated areas of concern[,]"—human rights violations not being one of those five. Pls.' Mem. at 14–15 (citing 50 U.S.C. § 4813(a)(2)) (emphasis omitted). The defendants respond that the statutory scheme authorizes them to make additions to the Entity List based on "human rights reasons[,]" Defs.' Opp'n at 15, and, in doing so, they rely principally on their authority under 50 U.S.C. §§ 4813(a)(16) and 4811(2)(D), see id. at 15–17.[5] Upon consideration of the statutory scheme as related to the defendants' maintenance of the Entity List through the EARs, the Court concludes

---

[5] The defendants briefly note that "even if there were some ambiguity in the statute (there is not), the defendants' interpretation is at least reasonable and merits deference[,]" citing Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837 (1984). Defs.' Opp'n at 16. The plaintiffs respond that "no heightened deference to the [defendants] is appropriate[]" because "[t]he parties agree that the statute is not silent or ambiguous on the question of [the d]efendants' authority[] . . . and 'the law is clear that agencies are not entitled to deference for interpretations offered by their counsel in legal briefs.'" Pls.' Reply at 6 (quoting Shea v. Clinton, 850 F. Supp. 2d 153, 161 (D.D.C. 2012). But because the Court ultimately concludes that the defendants' statutory authority to list entities for alleged human rights violations is clear, it need not consider whether to defer to any agency interpretation. See Chevron, 467 U.S. at 842 ("If the intent of Congress is clear, that is the end of the matter[.]").

that the plaintiffs have not shown they are likely to succeed on the merits of their statutory authority claim.

Three basic tenets of administrative law form the premise of an ultra vires claim. First, "an agency's power is no greater than that delegated to it by Congress." Lyng v. Payne, 476 U.S. 926, 937 (1986). "Second, agency actions beyond delegated authority are ultra vires and should be invalidated." Am. Hosp. Ass'n v. Azar, 410 F. Supp. 3d 142, 151 (D.D.C. 2019), rev'd on other grounds, 964 F.3d 1230 (D.C. Cir. 2020) (citing Transohio Sav. Bank v. Dir., Off. of Thrift Supervision, 967 F.2d 598, 621 (D.C. Cir. 1992)). Third, the Court must look to an agency's enabling statute and subsequent legislation to determine whether the agency has acted within the bounds of its authority. See Univ. of D.C. Faculty Ass'n/NEA v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 163 F.3d 616, 620–21 (D.C. Cir. 1998) (explaining that ultra vires claims require courts to review the relevant statutory materials to determine whether "Congress intended the [agency] to have the power that it exercised when it [acted]").

Ultra vires judicial review is available without "dependen[ce] on the APA review process or on [a] waiver of sovereign immunity." Fed. Express Corp. v. U.S. Dep't of Com., 486 F. Supp. 3d 69, 80 (D.D.C. 2020), appeal docketed, No. 20-5337 (D.C. Cir. Nov. 16, 2020). However, "[t]he scope of non-APA ultra vires review is 'narrow.'" Id. at 81 (quoting Sears, Roebuck & Co. v. U.S. Postal Serv., 844 F.3d 260, 265 (D.C. Cir. 2016).[6] "Courts will exercise

---

[6] The defendants point out that the plaintiffs, in pursuing preliminary injunctive relief, do not rely on their due process or APA claims, Defs.' Opp'n at 12–13, and the plaintiffs agree, see Pls.' Reply at 17 ("[T]he [p]laintiffs pleaded their ultra vires claim (the only one at issue in this motion) in a separate count from their APA claim."). The defendants then argue that the Court's review must, accordingly, be "extraordinarily narrow . . . covering only extreme agency error." Defs.' Opp'n at 13 (internal citations and quotation marks omitted). The plaintiffs respond that the defendants are "wrong to suggest that a heightened standard applies[]" because the defendants' "'extreme agency error' standard concerns the judicial 'exception' established in Leedom v. Kyne, 358 U.S. 184 (1958)." Pls.' Reply at 4. In Kyne, the Supreme Court held that the National Labor Relations Board acted "in excess of its delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act," 358 U.S. at 188, despite "a putative bar on district court review [ ] implied from the silence of a statute permitting review in the

(continued . . .)

their power to review alleged ultra vires agency action when an agency 'patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute.'" Hunter v. Fed. Energy Regulatory Comm'n, 569 F. Supp. 2d 12, 16 (D.D.C. 2008) (quoting Griffith v. Fed. Lab. Rels. Auth., 842 F.2d 487, 493 (D.C. Cir. 1988)), aff'd, 348 F. App'x 592 (D.C. Cir. 2009) (per curiam).

The plaintiffs argue that the

> [d]efedants cannot list an entity based on the entity's alleged involvement in some other, non-specified area[ beyond the five areas specified in § 4811(2)(A) and t]o do so would flout the express limit Congress placed on [the d]efendants' listing authority through [the] ECRA: that the list "shall" be "establish[ed] and maintain[ed] [. . .] pursuant to the policy set forth in [§] 4811(2)(A)."

Pls.' Mem. at 15 (fourth and fifth alterations in original).  In other words, the plaintiffs argue that the defendants only have statutory authority to create and maintain the Entity List pursuant to §§ 4813(a)(2) and 4811(A)(2).  See id.  The defendants respond that the plaintiffs' position mistakenly applies §§ 4811 and 4813.  See Defs.' Opp'n at 14–19.  According to the defendants, they properly exercised their delegated authority in listing Changji under §§ 4813(a)(16) and 4811(2)(D), rather than §§ 4813(a)(2) and 4811(A)(2).  Id. at 15.

Section 4813(a) provides the following:

> In carrying out this subchapter on behalf of the President, the Secretary, in consultation with the Secretary of State, the Secretary of Defense, the Secretary of Energy, and the heads of other Federal agencies as appropriate, shall—
>
> > (1) establish and maintain a list of items that are controlled under this subchapter;

---

(. . . continued)
courts of appeals[,]" Bd. of Governors of the Fed. Rsrv. System v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991).  To that point, at least one other member of this Court has held that "Congress cannot be 'understood [even] generally to have precluded [judicial] review'—let alone ultra vires review[]" for the ECRA.  Fed. Express Corp., 486 F. Supp. 3d at 79 (alterations in original) (quoting Griffith v. Fed. Lab. Rels. Auth., 842 F.2d 487, 492 (D.C. Cir. 1988)).  However, the Court need not determine whether it should agree with this ruling because the Court concludes the plaintiffs' ultra vires claim is unlikely to succeed even under the less-stringent general standard.

>(2) establish and maintain a list of foreign persons and end-uses that are determined to be a threat to the national security and foreign policy of the United States pursuant to the policy set forth in [§] 4811(2)(A) of this title;
>
>(3) prohibit unauthorized exports, reexports, and in-country transfers of controlled items, including to foreign persons in the United States or outside the United States;
>
>(4) restrict exports, reexports, and in-country transfers of any controlled items to any foreign person or end-use listed under paragraph (2); [and]
>
>. . .
>
>(16) undertake any other action as is necessary to carry out this subchapter that is not otherwise prohibited by law.

50 U.S.C. §§ 4813(a), (a)(1)–(4), (a)(16).  And § 4811(2) provides that

>[t]he national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled for the following purposes:
>
>>(A) To control the release of items for use in—
>>
>>>(i) the proliferation of weapons of mass destruction or of conventional weapons;
>>>
>>>(ii) the acquisition of destabilizing numbers or types of conventional weapons;
>>>
>>>(iii) acts of terrorism;
>>>
>>>(iv) military programs that could pose a threat to the security of the United States or its allies; or
>>>
>>>(v) activities undertaken specifically to cause significant interference with or disruption of critical infrastructure.
>>
>>. . .
>>
>>(D) To carry out the foreign policy of the United States, including the protection of human rights and the promotion of democracy.

11

Id. §§ 4811(2), (2)(A), (2)(D).  Based on a plain reading of these clear statutory provisions, the Court agrees with the defendants that Changji's "placement on the Entity List for [alleged] human rights violations falls squarely within the plain meaning of [§] 4813(a)(16)[,]" Defs.' Opp'n at 15, and, therefore, the defendants did not act beyond their delegated authority in adding Changji to the Entity List because of alleged human rights violations.

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)).  Through § 4811, Congress sets forth "the policy of the United States[]" for the ECRA.  50 U.S.C. § 4811.  That policy includes a broad swath of objectives, including, inter alia, implementing controls as required by specific objectives of the United States' national security and foreign policy.  See id. § 4811(2).  These specified objectives include the five specific goals set forth in § 4811(2)(A), as well as "the protection of human rights and the promotion of democracy."  Id. §§ 4811(2)(A), (D).  Under the comprehensive policy of § 4811, Congress requires that the defendants "shall" implement a plethora of actions, including creating certain lists, crafting prohibitions, restrictions, and requirements, and establishing certain processes.  See id. §§ 4813(a)(1)–(16).  Included among those particular tasks is the creation of at least one list made pursuant to the specific policies set forth in § 4811(2)(A), see § 4813(a)(2), but, moreover, the defendants are also required to "undertake any other action as is necessary to carry out this subchapter that is not otherwise prohibited by law[,]" id. § 4813(a)(16).

In authorizing the defendants to undertake "any other action as is necessary to carry out [the] subchapter[,]" 50 U.S.C. § 4813(a)(16) (emphasis added), § 4813(a)(16) broadens the

12

defendants' options for addressing the subject areas identified by the ECRA, as they deem necessary. Additionally, Congress does not prohibit the defendants anywhere in the statute from, for instance, creating a list of entities with consequential controls that furthers "the foreign policy of the United States, including the protection of human rights and the promotion of democracy" id. § 4811(2)(D). See generally id. § 4813. Moreover, the statutory language clearly tasks the defendants with furthering the other policy objectives set in § 4811, including the protection of human rights, by using the array of all applicable specified actions and "undertak[ing] any other action as is necessary" to advance that goal. Id. § 4813(a)(16). Therefore, pursuant to § 4813(a)(16), the defendants may create and maintain a list that includes alleged human rights abusers, as well as entities that "are determined to be a threat to the national security and foreign policy of the United States pursuant to the policy set forth in section 4811(2)(A)[,]" id. § 4813(a)(2).

The plaintiffs argue that "[t]he negative-implication canon[,]" also known as the expressio unius est exclusio alterius, "confirms [their contrary] reading" of the defendants' statutory authority, Pls.' Mem. at 16, as does "the canon against surplusage[,]" Pls.' Reply at 9. The plaintiffs further argue that the statute limits the defendants' options through the "'well established canon of statutory interpretation" that "the specific governs the general.'" Pls.' Reply at 8. None of these arguments affect the Court's conclusion on the grant of authority relevant to Changji's listing.

Under the expressio unius canon, "the 'mention of one thing implies exclusion of another thing.'" Halverson v. Slater, 129 F.3d 180, 185 (D.C. Cir. 1997). However, as this Circuit has instructed,

> [t]he expressio unius canon is a feeble helper in an administrative setting, where Congress is presumed to have left to reasonable agency discretion questions that it

13

> has not directly resolved. It offers too thin a reed to support the conclusion that Congress has clearly resolved an issue. And when countervailed by a broad grant of authority contained within the same statutory scheme, the canon is a poor indicator of Congress' intent.

Adirondack Med. Ctr. v. Sebelius, 740 F.3d 692, 697 (D.C. Cir. 2014) (internal citations and quotation marks omitted). Based on this pronouncement, the Court concludes that "[t]he negative implication [the plaintiffs] press[ ] cannot carry the day over the text and structure of the statute, which confers specific and broad authority [.]" See Farrell v. Blinken, 4 F.4th 124, 137 (D.C. Cir. 2021).

Likewise, reading § 4813(a)(16) to permit additions to the Entity List based on alleged human rights violations does not render § 4813(a)(2) mere surplusage. Through § 4813(a)(2), Congress sought to ensure that the defendants implemented controls under the statute pursuant to the specific policy objectives outlined in § 4811(2)(A) and utilized "a list of foreign persons and end-uses" as a particular means to implement such controls. Id. § 4813(a)(2). Congress did not want the defendants, for example, to merely utilize "licenses," id. § 4813(a)(5), or "require measures for compliance," id. § 4813(a)(7), in addressing the concerns identified in § 4811(2)(A). Instead, Congress wanted the "establish[ment] and maint[enance of] a list . . . ." Id. § 4813(a)(2). This is not the case, however, with § 4813(a)(16), which authorizes the defendants to take "any" actions "other" than those already prescribed that would be "necessary to carry out" the objectives of the statute, such as listing entities for human rights reasons. 50 U.S.C. § 4813(a)(16).

Furthermore, the Court's construction does not violate the "ancient interpretive principle" that "the specific governs the general," see Nitro-Lift Techs., LLC v. Howard, 568 U.S. 17, 21 (2012); see also Pls.' Reply at 8, because § 4813(a)(2) does not impose a restriction on the defendants' ability to establish and maintain lists for other reasons under the ECRA, see 50

14

U.S.C. § 4813(a)(2).  As the plaintiffs candidly acknowledged during oral argument: "one of the things that [the defendants] may be able to do is create some other lists."  Transcript for Telephonic Motion at 33:14–15 (Sept. 24, 2021), ECF No. 38.  Consistent with that same logic, the statute plainly permits the defendants to issue a list naming the plaintiffs for the policy reasons set forth in the statute, even if that list also includes entities for the reasons enumerated in § 4813(a)(2).

The plaintiffs further assert that "[i]f Congress wanted to give [the d]efendants broad discretion to address national security and foreign policy concerns without regulating which types of national security and foreign policy concerns justify action, it could have easily done so."  Pls.' Mem. at 17.  Certainly, the plaintiffs' challenge could be simply resolved had Congress either provided a reference in § 4813(a)(2) to the human rights concerns of § 4811(2)(D) or explicitly included authorization in § 4811(a)(16) for the defendants to utilize additional or combined lists.  But the fact that alternative statutory constructions would have provided overwhelming clarity does not conflict with the Court's conclusion that Congress's intent is nevertheless clear from the statute's entire text.

Finally, the plaintiffs assert that the history of the ECRA supports their position, rather than the defendants' position.  Pls.' Reply at 14–15.  But, as the defendants correctly note, Congress "modeled much of the [ECRA] on [the defendants'] then[-]existing regulations[,]" Defs.' Opp'n at 20 (citing Fed. Express Corp., 486 F. Supp. 3d at 81), and these then-existing regulations provided for entities to be listed for reasons beyond those now memorialized in § 4811(2)(A), see, e.g., Russian Sanctions: Addition to the Entity List to Prevent Violations of Russian Industry Sector Sanctions, 80 Fed. Reg. 47402–07 (Aug. 7, 2015) (adding to the Entity List based on links to Russian actions undermining democratic processes and institutions in

15

Ukraine), and the ECRA provides that those regulations "shall continue in effect according to their terms[,]" to the extent they are not "modified, superseded, set aside, or revoked under the [ECRA.]"  50 U.S.C. § 4826(a).  And because nothing in the ECRA "modifie[s], supersede[s], set[s] aside, or revoke[s]" the maintenance of the Entity List in accordance with the defendants' past practices, § 4813(a)(16) permits such maintenance to continue.

Accordingly, the Court concludes that the plaintiffs have not shown a likelihood of success on the merits on their claim that the defendants exceeded their statutory authority in listing Changji on the Entity List pursuant to the ECRA.

### 2. The Plaintiffs' Claim that the Defendants Violated Their Own Regulations

Under the EARs, additions may be made to the Entity List where "there is reasonable cause to believe, based on specific and articulable facts, that [an] entity has been involved, is involved, or poses a significant risk of being or becoming involved in activities that are contrary to the national security or foreign policy interests of the United States . . . ."  15 C.F.R. § 744.11(b).  The plaintiffs claim that, pursuant to this regulation, "federal law . . . require[s the defendants] to have 'specific and articulable facts' supporting their conclusion" to justify adding Changji to the Entity List.  Pls.' Mem. at 18.  And, according to the plaintiffs, the defendants failed to provide this information.  Id.  The defendants respond that, even "if an alleged violation of a regulation could serve as the basis for an ultra vires claim,[7] the plaintiffs[] remain unable to meet its demanding standard."  Defs.' Opp'n at 23.

---

[7] The defendants argue that the plaintiffs' regulatory authority claim strays from the permissible realm of ultra vires review.  Defs.' Opp'n at 22–23.  "As the [District of Columbia] Circuit [has] noted, 'none of [its] decisions have placed an agency's failure to follow its own regulations in the 'ultra vires' category[.]'"  Postal Police Offs. Ass'n v. U.S. Postal Serv., 502 F. Supp. 3d 411, 422 (D.D.C. 2020).  However, "[t]his is not to say an agency is free to disregard its own regulations."  Eagle Tr. Fund v. U.S. Postal Serv., 365 F. Supp. 3d 57, 68 (D.D.C. 2019).  Indeed, it is "clear beyond cavil that 'an agency is bound by its own regulations[,]'" Friedler v. Gen. Servs. Ass'n, 271 F.Supp.3d 40, 61 (D.D.C. 2017), and the defendants are "not free to ignore . . . [their] regulations while they remain in effect."  Nat'l Env't Dev. Assoc.'s Clean Air Project v. Env't Prot. Agency, 752 F.3d 999, 1009 (D.C. Cir. 2014)
(continued . . .)

For several reasons, the Court agrees with the defendants' position that the plaintiffs cannot demonstrate that the defendants acted contrary to their own regulations.  First, the EARs do not specifically require the defendants to disclose to a listed entity the facts supporting the listing decision.  See generally 15 C.F.R. § 744.11(b).  Second, even if the regulations did require such a disclosure, the defendants did represent that the listing was due to "the practice of forced labor involving members of Muslim minority groups" in Xinjiang.  85 Fed. Reg. at 44,159.  Without any elaboration from the regulations, or even the plaintiffs, on this putative standard, the Court cannot conclude that the information that the defendants provided in support of Changji's listing does not meet it.  And third, while the plaintiffs may decry that the defendants have disregarded the plaintiffs' "affirmative evidence of clean audits, corporate sustainability, and ethical business practices[,]" see Pls.' Reply at 18, this challenge ultimately asserts a "purported lack of reasoned decisionmaking" remarkably akin to "a heartland arbitrary-and-capricious challenge under the APA[,]" Eagle Tr. Fund v. U.S. Postal Serv., 811 Fed. App'x 669, 670 (D.C. Cir. 2020), cert. denied sub nom. No. 20-1026, 2021 WL 4507626 (U.S. Oct. 4, 2021).  And, as the plaintiffs are well-aware, see Pls.' Reply at 17 (addressing the defendants' argument by explaining that the plaintiffs "pleaded their ultra vires claim[—]the only one at issue in this motion[—]in a separate count from their APA claim[]"), the ECRA precludes this Court from engaging in such an APA review.  See 50 U.S.C. § 4821(a) ("Except as [otherwise] provided . . . , the functions exercised under this subchapter shall not be subject to [§§] 551, 553 through 559, and 701 through 706 of title 5.").

---

(. . . continued)
(internal quotation marks omitted) (quoting U.S. Lines, Inc. v. Fed. Mar. Comm'n, 584 F.2d 519, 526 n. 20 (D.C. Cir. 1978)).  Accordingly, the Court will consider the plaintiffs' claim that the defendants' "violation of [their] own regulation [is] . . . ultra vires, i.e., in excess of their authority."  See Pls.' Reply at 17.

In sum, the Court concludes that the plaintiffs cannot satisfy their burden of showing a likelihood of success on the merits based on either their statutory and regulatory ultra vires claims.

**B.      The Remaining Preliminary Injunction Factors**

"A party seeking a preliminary injunction must also show that it is likely to suffer an irreparable injury in the absence of preliminary relief[,]" Friends of Animals v. U.S. Bureau of Land Mgmt., Civil Action No. 18-2029 (RDM), 2021 WL 2935900, at *20 (D.D.C. July 13, 2021), and that its position is favored by "the balance of harms and public interest"—factors that merge "when the government is a party to the litigation[,]" Afghan Yar Int'l Constr. Co. v. U.S. Dep't of State, Civ. Acton No. 21-1740 (CKK), 2021 WL 3472275, at *18 (D.D.C. Aug. 6, 2021) (internal quotation marks and citations omitted).

The plaintiffs contend that they are suffering and will continue to suffer extensive harms to their business if an injunction is not issued. See Pls.' Mem. at 20–27. To support this assertion, the plaintiffs submitted multiple declarations—public and sealed— claiming that the inclusion of Changji on the Entity List has caused: (1) an inability to acquire items subject to the EARs, (2) harm to the plaintiffs' business reputation, (3) loss of their market share, (4) the need to impose forced layoffs, and (5) unrecoverable monetary losses. See generally Yang Decl.; Yang Suppl. Decl.; Nweke Decl.; Yang 2d Suppl. Decl. The plaintiffs also contend that the government will not be harmed by an injunction removing Changji from the Entity List, see id. at 28–29, and that a preliminary injunction would further the public interest, see id. at 29–30.

However, the Court need not consider whether the plaintiffs have met the irreparable injury factor, nor the other remaining factors, because the "plaintiff has not shown a likelihood of

18

success on the merits[.]"[8]  Greater N. Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev., 639 F.3d 1078, 1089 (D.C. Cir. 2011).

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiffs' motion for a preliminary injunction.

**SO ORDERED** this 4th day of November, 2021.[9]

REGGIE B. WALTON<br>United States District Judge

---

[8] The Court is not unsympathetic to the plaintiffs' alleged harms.  Indeed, "[i]njury to reputation can, at least at times, rise to the level necessary to support the issuance of an injunction[,]" Atlas Air, Inc. v. Int'l Bhd. of Teamsters, 280 F. Supp. 3d 59, 103 (D.D.C. 2017), aff'd en banc, 928 F.3d 1102 (D.C. Cir. 2019), and "because '[i]njury to reputation or goodwill is not easily measurable in monetary terms' it is typically 'viewed as irreparable[,]'" Xiaomi Corp. v. U.S. Dep't of Def., Civ. Action No. 21-280 (RC), 2021 WL 950144, at *9 (D.D.C. Mar. 12, 2021) (first alternation in original) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2021)).  Furthermore, entities that make "a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution in profits, or demonstrate[ ] that the loss would cause extreme hardship to the business, or even threaten destruction of the business[,]" may be entitled to preliminary injunctive relief.  Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S., 840 F. Supp. 2d 327, 336 (D.D.C. 2012) (internal citations and quotations omitted).  Nevertheless, the plaintiffs' inability to satisfy success on the merits factor precludes the Court from granting the plaintiffs' request for a preliminary injunction.

[9] As the Court previously indicated, on October 6, 2021, the Court issued an Order consistent with this Memorandum Opinion.  See Order at 1 (Oct. 6, 2021).